W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

KIP'S BIG BOY, INC., a Corporation, Defendant.

Civ. A. No. 3–1580–C.

United States District Court
N. D. Texas,
Dallas Division.

March 20, 1969.

Richard L. Collier, Trial Atty., Dallas, Tex., M. J. Parmenter, Regional Atty., U. S. Department of Labor, Washington, D. C., for plaintiff.

Brady, Drake & Wilson, by Philip Wilson, Dallas, Tex., for defendant.

1. 19 U.S.C.A. § 203(s) (1) was amended effective February 1, 1967, deleting the "$250,000 inflow test" and reducing the

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

The Secretary of Labor brings this case pursuant to Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. § 201 et seq.), for alleged violations occurring between July 19, 1964–July 19, 1966. He prays that the defendant be permanently enjoined from violating Sections 15(a) (2) and 15(a) (5) of the Act and from withholding payment of wages found by the court to be due present and former employees of the defendant under the Act. Jurisdiction is based upon Section 17 (29 U.S.C.A. § 217).

The first consideration in this case is the definition of "Enterprise", as defined by Section 3(s) of the Act. "Enterprise" is defined by Section 3(s) (1) as follows:

(s) "Enterprise engaged in commerce or in the production of goods for commerce" means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

(1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, exclusive of excise taxes at the retail level which are separately stated and if such enterprise purchases or receives goods for resale that move or have moved across state lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more; * * *." 1

The parties have stipulated defendant's ownership of nine (9) restaurants, a warehouse, and a commissary. Also stipulated was defendant's gross annual

annual gross dollar volume of sales to $500,000.

dollar volume of sales in excess of $1,-000,001 in each of the three (3) calendar year periods with which we are concerned. The third item, $250,000 or more of goods purchased or received across state lines, known as the "inflow test", was submitted to the Court on the basis of stipulated records denominated "Invoices representing total purchases by Kip's Warehouse or Commissary in Dallas, Texas, from place or places located outside of the State of Texas 7–18–64 thru 8–17–66." [2] Examination of these records reveals that in none of the three (3) time periods did Kip's exceed the $250,000 minimum.

Plaintiff in support of its contention offered no documentary evidence of interstate purchases for the calendar year 1964 in point of time prior to July 18, 1964. The purchase analysis and documentary evidence offered by the plaintiff established "inflow" of less than $100,000 in interstate purchases. The balance of the plaintiff's proof with respect to 1964 purchases was upon the theoretical application of percentiles to the gross sales of the defendant by the witness Weisbrod who reconstructed interstate purchases by stating that they represented 7.35 per cent of the defendant's gross sales. This witness had assumed gross sales to be in excess of $4,-000,000, thereby arriving at "inflow" purchases well in excess of $250,000.00. It was conclusively established, however, that the gross volume of defendant's sales for the year 1964 was $3,225,590.63 so that even assuming the validity of the percentile method of determining inflow, then the annual purchases for the calendar year 1964 were well below the $250,-000 requirement.

For the year 1965 gross sales were found by the witness to be in excess of $4,792,000, but upon cross-examination and from the uncontroverted testimony of other witnesses, gross sales appeared to be but $3,702,369.71.

For the calendar year 1966, a purchase analysis prepared pursuant to plaintiff's interrogatories for the period of time from February 28, 1966 through August 17, 1966 showed purchases in the amount of $106,953.64. It cannot be presumed that interstate purchases continued at this same rate subsequent to August 17, 1966, and the total amount of annual "inflow" purchases should have been the subject of documentary evidence and such proof has not been made by the plaintiff for the balance of 1966.

The burden of proving "coverage" is upon the plaintiff, and having failed in this burden defendant is entitled to judgment.

---

2. All purchases are made via the warehouse or commissary.